**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG DIVISION**

| | |
|---|---|
| ORGANON LLC, ORGANON INTERNATIONAL GMBH, and DERMAVANT SCIENCES GMBH,<br>*Plaintiffs*,<br>v.<br>MYLAN PHARMACEUTICALS INC. and MYLAN INC.,<br>*Defendants.* | Civil Action No. 1:26-CV-112 (Kleeh) |

**DEFENDANTS MYLAN PHARMACEUTICALS INC.'S AND MYLAN INC.'S**
**ANSWER, DEFENSES, AND COUNTERCLAIMS TO COMPLAINT**

Mylan Pharmaceuticals Inc. ("MPI") and Mylan Inc. (collectively, "Mylan" or "Defendants") by their undersigned attorneys, answer and respond to the Complaint of Plaintiffs Organon LLC, Organon International GmbH, and Dermavant Sciences GmbH (collectively, "Plaintiffs") as follows:

## NATURE OF THIS ACTION

1. This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 100 *et. seq.*, arising from Mylan's submission to the United States Food and Drug Administration ("FDA") of Abbreviated New Drug Application ("ANDA") No. 221179 ("Mylan's ANDA") seeking approval to engage in the commercial manufacture, use, or sale of a generic version of Organon's VTAMA tapinarof cream, 1% drug product ("Mylan's ANDA Product") prior to the expiration of one or more of United States Patent Nos. 10,195,160 (the "'160 patent"), 10,426,743 (the "'743 patent"), 10,647,649 (the "'649 patent"), 11,458,108 (the "'108 patent"), 11,590,088 (the "'088 patent"), 11,597,692 (the "'692 patent"), 11,612,573 (the "'573 patent"), 11,617,724 (the "'724 patent"), and 11,622,945 (the "'945 patent"), (collectively, the "Patents-in-Suit").

**ANSWER**: Paragraph 1 contains legal conclusions and characterizations to which no answer is required. To the extent an answer is deemed required, Mylan admits that Plaintiffs' Complaint purports to state an action for patent infringement arising under the patent laws of the

United States, 35 U.S.C. § 100 *et. seq.* Mylan further admits that MPI submitted Abbreviated New Drug Application ("ANDA") No. 221179 ("MPI's ANDA") to the U.S. Food and Drug Administration ("FDA") seeking approval for a generic version of a tapinarof cream, 1% drug product ("MPI's ANDA Product") with certifications to the Patents-in-Suit. Mylan denies any and all remaining allegations of this paragraph.

## THE PARTIES

2. Organon LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 30 Hudson Street, 33rd Floor, Jersey City, NJ 07302. Organon LLC is the holder of New Drug Application No. 215272 for VTAMA.

**ANSWER**: Mylan lacks sufficient knowledge and information to form a belief as to the truth of the allegations in paragraph 2, and, on that basis, denies them.

3. Organon International GmbH is a corporation organized and existing under the laws of Switzerland with its principal place of business at Weystrasse 20, 6006 Lucerne, Switzerland. Organon International GmbH is a global healthcare company focused on improving the health of women throughout their lives.

**ANSWER**: Mylan lacks sufficient knowledge and information to form a belief as to the truth of the allegations in paragraph 3, and, on that basis, denies them.

4. Dermavant Sciences GmbH is a corporation organized and existing under the laws of Switzerland with its principal place of business at Weystrasse 20, 6006 Lucerne, Switzerland. Dermavant, an Organon company, is a biopharmaceutical company dedicated to developing and commercializing innovative therapeutics in immuno-dermatology.

**ANSWER**: Mylan lacks sufficient knowledge and information to form a belief as to the truth of the allegations in paragraph 4, and, on that basis, denies them.

5. On information and belief, Mylan Pharmaceuticals Incorporated ("MPI") is a corporation organized and existing under the laws of the State of West Virginia, having a principal place of business at 3711 Collins Ferry Road, Morgantown, West Virginia 26505. On information and belief, MPI is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs.

**ANSWER**: MPI admits that it is a corporation organized and existing under the laws of the State of West Virginia, having a place of business at 3711 Collins Ferry Road, Morgantown,

West Virginia 26505. MPI further admits that it is in the business of, among other things, developing, manufacturing, and selling generic pharmaceutical products. Mylan denies any and all remaining allegations of this paragraph.

6. On information and belief, Mylan Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, having a principal place of business at Robert J. Coury Global Center, 1000 Mylan Blvd., Canonsburg, Pennsylvania 15317.

**ANSWER**: Admitted.

7. On information and belief, MPI is a wholly-owned subsidiary of Mylan Inc.

**ANSWER**: Admitted.

8. On information and belief, the acts of MPI complained of herein were done with the cooperation, participation, and assistance of Mylan Inc.

**ANSWER**: Denied.

## JURISDICTION AND VENUE

9. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et. seq.*, and jurisdiction is proper under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

**ANSWER**: Paragraph 9 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, Mylan admits that Plaintiffs' Complaint purports to allege a civil action for patent infringement arising under the patent laws of the United States, including 35 U.S.C. § 100 *et. seq.* Further, Mylan does not dispute subject matter jurisdiction in this judicial district for purposes of this litigation only. Mylan denies any and all remaining allegations of this paragraph.

## ***PERSONAL JURISDICTION OVER MYLAN PHARMACEUTICALS INC.***

10. This Court has personal jurisdiction over MPI because MPI is incorporated in West Virginia and has its principal place of business in West Virginia.

**ANSWER**: Paragraph 10 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, for purposes of this litigation only, MPI does not contest

personal jurisdiction in this judicial district. Mylan denies any and all remaining allegations of this paragraph.

11. This Court has personal jurisdiction over MPI by virtue of, *inter alia*, the fact that MPI has committed, aided, abetted, contributed to, and/or participated in the commission of the tortious act of patent infringement that has led, or will lead, to foreseeable harm and injury to Plaintiffs within the United States, including in the State of West Virginia, and because MPI has engaged in purposeful systematic and continuous contacts with the State of West Virginia.

**ANSWER**: Paragraph 11 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, for purposes of this litigation only, MPI does not contest personal jurisdiction in this judicial district. Mylan denies any and all remaining allegations of this paragraph.

12. On information and belief, MPI is in the business of, among other things, manufacturing, marketing, importing, offering for sale, and selling pharmaceutical products, including generic drug products, throughout the United States, including in this Judicial District. On information and belief, MPI also prepares and/or aids in the preparation and submission of ANDAs to the FDA, including Mylan's ANDA. On information and belief, this Judicial District will be a destination for the generic drug product described in Mylan's ANDA.

**ANSWER**: The allegations in this paragraph relate solely to issues of venue and jurisdiction. MPI does not contest personal jurisdiction in this judicial district for purposes of this litigation only, and therefore, no answer is required. To the extent an answer is deemed required, MPI admits that it is in the business of, among other things, developing, manufacturing, and selling generic pharmaceutical products. Mylan denies any and all remaining allegations of this paragraph.

13. This Court has personal jurisdiction over MPI because, *inter alia*, MPI has committed an act of patent infringement under 35 U.S.C. § 271(e)(2) and intends a future course of conduct that includes acts of patent infringement in West Virginia. These acts have led and will lead to foreseeable harm and injury to Plaintiffs in West Virginia. For example, on information and belief, following approval of Mylan's ANDA, MPI will make, use, import, sell, and/or offer for sale Mylan's ANDA Product in the United States, including in West Virginia, prior to the expiration of the Patents-in-Suit.

**ANSWER**: Paragraph 13 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, for purposes of this litigation only, MPI does not contest

personal jurisdiction in this judicial district. Mylan denies any and all remaining allegations of this paragraph.

14. On information and belief, MPI intends to benefit directly if Mylan's ANDA is approved by participating in the manufacture, importation, distribution, and/or sale of Mylan's ANDA Product.

**ANSWER**: Paragraph 14 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, for purposes of this litigation only, MPI does not contest personal jurisdiction in this judicial district. Mylan denies any and all remaining allegations of this paragraph.

15. On information and belief, MPI actively participated in the preparation and submission of Mylan's ANDA. On information and belief, Mylan will work to seek regulatory approval, and will engage in manufacturing, marketing, sale, and distribution of generic pharmaceutical products, including Mylan's ANDA Product, throughout the United States, including in this Judicial District, prior to the expiration of the Patents-in-Suit.

**ANSWER**: The allegations in this paragraph relate solely to issues of venue and jurisdiction. MPI does not contest personal jurisdiction in this judicial district for purposes of this litigation only, and therefore, no answer is required. To the extent an answer is deemed required, MPI admits that it submitted MPI's ANDA to the FDA seeking approval for MPI's ANDA Product. Mylan denies any and all remaining allegations of this paragraph.

16. On information and belief, MPI has previously been sued in this Judicial District and has availed itself of West Virginia courts through the assertion of counterclaims in suits brought in West Virginia and has not challenged personal jurisdiction. *See Boehringer Ingelheim Pharms. Inc. v. Mylan Pharms. Inc.*, No. 1:24-cv-00082-TSK (N.D.W. Va.); *Actelion Pharms. Ltd. v. Mylan Pharms. Inc.*, No. 1:23-cv-00088-TSK (N.D.W. Va.); *Novo Nordisk, Inc. v. Viatris Inc.*, No. 1:23-cv-00013-TSK (N.D.W. Va.); *Novo Nordisk, Inc. v. Mylan Pharms., Inc.*, No. 1:22-cv-00023-JPB, Dkt. No. 27 (N.D.W. Va. May 16, 2022). MPI has also previously suggested or explicitly conceded that the Northern District of West Virginia would constitute a proper venue. *See Bausch Health Ireland Limited v. Mylan Lab'ys Ltd*, No. 1:22-cv-00020-TSK, Dkt. No. 49, Exhibit 1 at 3 (N.D.W. Va. Jan. 13, 2022) (noting that the proper jurisdiction for a lawsuit would be the Northern District of West Virginia).

**ANSWER**: The allegations in this paragraph relate solely to issues of venue and personal jurisdiction. MPI does not contest personal jurisdiction in this judicial district for purposes of this

litigation only, and therefore, no answer is required. To the extent an answer is deemed required, Mylan denies the allegations of this paragraph.

***PERSONAL JURISDICTION OVER MYLAN INC.***

17. This Court has personal jurisdiction over Mylan Inc. because Mylan Inc. has purposefully availed itself of the rights and benefits of West Virginia law by engaging in systematic and continuous contact with the State of West Virginia.

**ANSWER**: Paragraph 17 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, for purposes of this litigation only, Mylan Inc. does not contest personal jurisdiction in this judicial district. Mylan denies any and all remaining allegations of this paragraph.

18. On information and belief, Mylan Inc. is registered to do business within the State of West Virginia under Organization No. 230499.

**ANSWER**: Admitted.

19. On information and belief, Mylan Inc. is in the business of, among other things, manufacturing, marketing, importing, offering for sale, and selling pharmaceutical products, including generic drug products, throughout the United States, including in this Judicial District, through its own actions and through the actions of its agents and subsidiaries, including MPI, from which Mylan Inc. derives a substantial portion of its revenue. On information and belief, this Judicial District will be a destination for the generic drug product described in Mylan's ANDA.

**ANSWER**: The allegations in this paragraph relate solely to issues of venue and jurisdiction. Mylan Inc. does not contest personal jurisdiction in this judicial district for purposes of this litigation only, and therefore, no answer is required. To the extent an answer is deemed required, Mylan denies any and all remaining allegations of this paragraph.

20. This Court has personal jurisdiction over Mylan Inc. because, *inter alia*, Mylan Inc. has committed an act of patent infringement under 35 U.S.C. § 271(e)(2) and intends a future course of conduct that includes acts of patent infringement in West Virginia. These acts have led and will lead to foreseeable harm and injury to Plaintiffs in West Virginia. On information and belief, Mylan Inc. also prepares and/or aids in the preparation and submission of ANDAs to the FDA. On information and belief, Mylan Inc. committed, aided, abetted, contributed to, and/or participated in the commission of the tortious act of patent infringement that has led, or will lead, to foreseeable harm and injury to Plaintiffs, including by partaking in the drafting of Mylan's ANDA within this forum. On information and belief, Mylan Inc. acted in concert with MPI to

prepare and submit Mylan's ANDA for tapinarof cream, 1%, which was done at the direction of, under the control of, and for the direct benefit of Mylan Inc.

**ANSWER**: The allegations in this paragraph relate solely to issues of venue and jurisdiction. Mylan Inc. does not contest personal jurisdiction in this judicial district for purposes of this litigation only, and therefore, no answer is required. To the extent an answer is deemed required, Mylan denies any and all remaining allegations of this paragraph.

21. On information and belief, following FDA approval of the Mylan ANDA, Mylan will manufacture and supply the approved generic products before then marketing and selling the products throughout the United States at the direction, under the control, and for the direct benefit of Mylan Inc.

**ANSWER**: Paragraph 21 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, for purposes of this litigation only, Mylan Inc. does not contest personal jurisdiction in this judicial district. Mylan denies any and all remaining allegations of this paragraph.

22. On information and belief, Mylan Inc. will work to seek regulatory approval and will engage in manufacturing, marketing, sale, and distribution of generic pharmaceutical products, including Mylan's ANDA Product, throughout the United States, including in this Judicial District, prior to the expiration of the Patents-in-Suit.

**ANSWER**: Paragraph 22 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, for purposes of this litigation only, Mylan Inc. does not contest personal jurisdiction in this judicial district. Mylan denies any and all remaining allegations of this paragraph.

23. On information and belief, Mylan Inc. has previously been sued in this Judicial District, has engaged in patent litigation in this District, and has previously not contested jurisdiction or venue in this District. *See, e.g.*, *Boehringer Ingelheim Pharms. Inc. v. Mylan Pharms. Inc. et al.*, No. 1:24-cv-00082-TSK (N.D.W. Va.); *Celgene Corp. v. Mylan Pharms. Inc.*, No. 1:20-cv-00003-IMK-RWT (N.D.W. Va.).

**ANSWER**: Paragraph 23 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, for purposes of this litigation only, Mylan Inc. does not

contest personal jurisdiction in this judicial district. Mylan denies any and all remaining allegations of this paragraph.

***<u>VENUE</u>***

24. Venue is proper in this Court as to MPI under 28 U.S.C. § 1391 because MPI resides in this District.

**ANSWER**: Paragraph 24 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, for purposes of this litigation only, MPI does not contest venue in this judicial district. Mylan denies any and all remaining allegations of this paragraph.

25. Venue is proper in this District as to MPI under 28 U.S.C. § 1400(b) at least because, on information and belief, MPI has committed or will commit an act of infringement in this District and has a regular and established place of business in this District. Venue is proper as to MPI because, on information and belief: (1) MPI filed Mylan's ANDA for the purpose of seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Mylan's ANDA Product in the United States, including West Virginia; and (2) upon approval of Mylan's ANDA, MPI will act directly, or indirectly through subsidiaries, intermediaries, distributors, retailers, or others, to market, distribute, offer for sale, sell, and/or import Mylan's ANDA Product in the United States, including West Virginia; and will derive substantial revenue from the use or consumption of Mylan's ANDA Product in West Virginia.

**ANSWER**: Paragraph 25 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, for purposes of this litigation only, MPI does not contest venue in this judicial district. Mylan denies any and all remaining allegations of this paragraph.

26. Venue is proper in this District as to Mylan Inc. under 28 U.S.C. § 1400(b) at least because, on information and belief, Mylan Inc. has committed or will commit an act of infringement in this District and has a regular and established place of business in this District. Venue is proper as to Mylan Inc. because, on information and belief: (1) Mylan Inc. coordinated with and directed MPI in the filing of Mylan's ANDA for the purpose of seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Mylan's ANDA Product in the United States, including West Virginia; and (2) upon approval of Mylan's ANDA, Mylan Inc. will act directly, or indirectly through subsidiaries, intermediaries, distributors, retailers, or others, to market, distribute, offer for sale, sell, and/or import Mylan's ANDA Product in the United States, including West Virginia; and will derive substantial revenue from the use or consumption of Mylan's ANDA Product in West Virginia.

**ANSWER**: Paragraph 26 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, for purposes of this litigation only, Mylan Inc. does not

contest venue in this judicial district. Mylan denies any and all remaining allegations of this paragraph.

**ORGANON'S VTAMA TAPINAROF CREAM DRUG PRODUCT**

27. Organon holds New Drug Application ("NDA") No. 215272, which authorizes the marketing of tapinarof cream, 1%, under the trade name VTAMA. VTAMA received FDA approval on May 23, 2022, for the topical treatment of plaque psoriasis in adults. On December 12, 2024, the FDA approved VTAMA for the topical treatment of atopic dermatitis in adults and pediatric patients 2 years of age and older.

**ANSWER**: Mylan admits that, according to the FDA publication titled Approved Drug Products with Therapeutic Equivalence Evaluations (the "Orange Book"), Organon LLC is listed as the NDA holder for NDA No. 215272. Mylan further admits that, according to the Orange Book, NDA No. 215272 is directed to tapinarof cream, 1% and states that NDA No. 215272 was approved on May 23, 2022. Mylan lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

28. Plaque psoriasis is a chronic skin condition where a patient's immune system makes skin cells grow too fast, which leads to patches of raised, inflamed, and red skin with silvery scales. Psoriasis plaques can affect any area of skin, and the most common areas affected by psoriasis plaques include the knees and elbows, stomach, lower back, and scalp. Plaque psoriasis is one of the most common diseases affecting the immune system in the United States. In the United States, there are over 7.5 million adults 20 years or older who have plaque psoriasis.

**ANSWER**: Mylan lacks sufficient knowledge and information to form a belief as to the truth of the allegations in paragraph 28, and, on that basis, denies them.

29. The active ingredient in VTAMA is tapinarof, which is also known as 3,5-dihydroxy-4-isopropyl-trans-stilbene. Tapinarof is an aryl hydrocarbon receptor ("AhR") agonist which decreases proinflammatory cytokines and increases expression of genes that encode skin barrier proteins, such as filaggrin, and genes that are involved in lipid production, such as ceramides.

**ANSWER**: Mylan admits that the December 2024 VTAMA prescribing information states, among other things, that "VTAMA (tapinarof) cream contains tapinarof as the active ingredient," "[t]apinarof is an aryl hydrocarbon receptor agonist," and that "[c]hemically, tapinarof

is 3,5-dihydroxy-4-isopropyl-*trans*-stilbene." Mylan lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

30. Initial drug development work on tapinarof began in the 1990s at a small biotech firm called Welichem Biotech, Inc. In 2012, GlaxoSmithKline acquired the rights to tapinarof for certain markets, including the United States, and continued efforts to develop a commercial form of tapinarof. In 2018, GlaxoSmithKline sold its rights to Dermavant which continued development efforts that ultimately led to the first U.S. marketing approval for a tapinarof product in 2022, which Dermavant marketed under the trade name VTAMA. In 2024, Organon acquired Dermavant and its rights in the VTAMA product.

**ANSWER**: Mylan lacks sufficient knowledge and information to form a belief as to the truth of the allegations in paragraph 30, and, on that basis, denies them.

31. The VTAMA development work led to numerous inventions relating to novel crystalline forms of tapinarof, novel manufacturing processes that result in highly pure forms of tapinarof, novel formulations of tapinarof that result in improved drug delivery, and novel methods of treating disease with tapinarof.

**ANSWER**: Mylan lacks sufficient knowledge and information to form a belief as to the truth of the allegations in paragraph 31, and, on that basis, denies them.

**PATENTS-IN-SUIT**

32. Dermavant Sciences GmbH is the owner of United States Patent No. 10,195,160, which was duly and legally issued on February 5, 2019, and is titled "Topical pharmaceutical compositions[.]" Each and every claim of the '160 patent is valid and enforceable. A copy of the '160 patent is attached as Exhibit 1.

**ANSWER**: Mylan admits that Plaintiffs purport to attach a copy of the '160 patent to the Complaint as Exhibit 1. Mylan admits that the '160 patent states on its face that it was issued on February 5, 2019, is entitled "Topical pharmaceutical compositions[,]" and lists Dermavant Sciences GmbH as the assignee. Mylan denies that the '160 patent was duly and legally issued. Mylan lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

33. Dermavant Sciences GmbH is the owner of United States Patent No. 10,426,743, which was duly and legally issued on October 1, 2019, and is titled "Topical pharmaceutical compositions[.]" Each and every claim of the '743 patent is valid and enforceable. A copy of the '743 patent is attached as Exhibit 2.

**ANSWER**: Mylan admits that Plaintiffs purport to attach a copy of the '743 patent to the Complaint as Exhibit 2. Mylan admits that the '743 patent states on its face that it was issued on October 1, 2019, is entitled "Topical pharmaceutical compositions[,]" and lists Dermavant Sciences GmbH as the assignee. Mylan denies that the '743 patent was duly and legally issued. Mylan lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

34. Dermavant Sciences GmbH is the owner of United States Patent No. 10,647,649, which was duly and legally issued on May 12, 2020, and is titled "Process for preparing tapinarof[.]" Each and every claim of the '649 patent is valid and enforceable. A copy of the '649 patent is attached as Exhibit 3.

**ANSWER**: Mylan admits that Plaintiffs purport to attach a copy of the '649 patent to the Complaint as Exhibit 3. Mylan admits that the '649 patent states on its face that it was issued on May 12, 2020, is entitled "Process for preparing tapinarof[,]" and lists Dermavant Sciences GmbH as the assignee. Mylan denies that the '649 patent was duly and legally issued. Mylan lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

35. Dermavant Sciences GmbH is the owner of United States Patent No. 11,458,108, which was duly and legally issued on October 4, 2022, and is titled "Topical pharmaceutical compositions[.]" Each and every claim of the '108 patent is valid and enforceable. A copy of the '108 patent is attached as Exhibit 4.

**ANSWER**: Mylan admits that Plaintiffs purport to attach a copy of the '108 patent to the Complaint as Exhibit 4. Mylan admits that the '108 patent states on its face that it was issued on October 4, 2022, is entitled "Topical pharmaceutical compositions[,]" and lists Dermavant Sciences GmbH as the assignee. Mylan denies that the '108 patent was duly and legally issued.

Mylan lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

36. Dermavant Sciences GmbH is the owner of United States Patent No. 11,590,088, which was duly and legally issued on February 28, 2023, and is titled "Use of tapinarof for the treatment of chronic plaque psoriasis[.]" A copy of the ’088 patent is attached as Exhibit 5. On January 28, 2025, Dermavant disclaimed claims 1-4, 6-10, 16, 18, and 21-22. Those claims are not asserted in the present action. Each and every remaining claim of the ’088 patent, including the claims asserted here, is valid and enforceable.

**ANSWER**: Mylan admits that Plaintiffs purport to attach a copy of the ’088 patent to the Complaint as Exhibit 5. Mylan admits that the ’088 patent states on its face that it was issued on February 28, 2023, is entitled "Use of tapinarof for the treatment of chronic plaque psoriasis[,]" and lists Dermavant Sciences GmbH as the assignee. Mylan further admits that, as reflected in publicly available records, Dermavant disclaimed claims 1-4, 6-10, 16, 18, and 21-22 of the ’088 patent. *See Encube Ethicals Pvt. Ltd. v. Dermavant Scis. GmbH*, No. IPR2024-00834, Paper 23 (P.T.A.B. Mar. 7, 2025). Mylan denies that the ’088 patent was duly and legally issued. Mylan lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

37. Dermavant Sciences GmbH is the owner of United States Patent No. 11,597,692, which was duly and legally issued on March 7, 2023, and is titled "Process for preparing tapinarof[.]" Each and every claim of the ’692 patent is valid and enforceable. A copy of the ’692 patent is attached as Exhibit 6.

**ANSWER**: Mylan admits that Plaintiffs purport to attach a copy of the ’692 patent to the Complaint as Exhibit 6. Mylan admits that the ’692 patent states on its face that it was issued on March 7, 2023, is entitled "Process for preparing tapinarof[,]" and lists Dermavant Sciences GmbH as the assignee. Mylan denies that the ’692 patent was duly and legally issued. Mylan lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

38. Dermavant Sciences GmbH is the owner of United States Patent No. 11,612,573, which was duly and legally issued on March 28, 2023, and is titled "Topical pharmaceutical compositions[.]" Each and every claim of the '573 patent is valid and enforceable. A copy of the '573 patent is attached as Exhibit 7.

**ANSWER**: Mylan admits that Plaintiffs purport to attach a copy of the '573 patent to the Complaint as Exhibit 7. Mylan admits that the '573 patent states on its face that it was issued on March 28, 2023, is entitled "Topical pharmaceutical compositions[,]" and lists Dermavant Sciences GmbH as the assignee. Mylan denies that the '573 patent was duly and legally issued. Mylan lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

39. Dermavant Sciences GmbH is the owner of United States Patent No. 11,617,724, which was duly and legally issued on April 4, 2023, and is titled "Topical pharmaceutical compositions[.]" Each and every claim of the '724 patent is valid and enforceable. A copy of the '724 patent is attached as Exhibit 8.

**ANSWER**: Mylan admits that Plaintiffs purport to attach a copy of the '724 patent to the Complaint as Exhibit 8. Mylan admits that the '724 patent states on its face that it was issued on April 4, 2023, is entitled "Topical pharmaceutical compositions[,]" and lists Dermavant Sciences GmbH as the assignee. Mylan denies that the '724 patent was duly and legally issued. Mylan lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

40. Dermavant Sciences GmbH is the owner of United States Patent No. 11,622,945, which was duly and legally issued on April 11, 2023, and is titled "Topical pharmaceutical compositions[.]" Each and every claim of the '945 patent is valid and enforceable. A copy of the '945 patent is attached as Exhibit 9.

**ANSWER**: Mylan admits that Plaintiffs purport to attach a copy of the '945 patent to the Complaint as Exhibit 9. Mylan admits that the '945 patent states on its face that it was issued on April 11, 2023, is entitled "Topical pharmaceutical compositions[,]" and lists Dermavant Sciences GmbH as the assignee. Mylan denies that the '945 patent was duly and legally issued. Mylan lacks

sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

## ACTS GIVING RISE TO THIS ACTION

41. Organon is the holder of NDA No. 215272, by which the FDA granted approval for tapinarof cream, 1%. Organon markets this topical cream in the United States under the trade name VTAMA.

**ANSWER**: Mylan admits that the Orange Book lists Organon LLC as the holder of NDA No. 215272, directed to tapinarof cream, 1%. Mylan further admits that the Orange Book states the proprietary name is VTAMA. Mylan lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph, and, on that basis, denies them.

42. VTAMA and the use of VTAMA in accordance with its label are covered by one or more claims of the Patents-in-Suit.

**ANSWER**: This paragraph contains legal conclusions to which no answer is required. To the extent an answer is deemed required, Mylan denies the allegations of this paragraph.

43. The FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") lists the Patents-in-Suit in connection with VTAMA.

**ANSWER**: This paragraph contains legal conclusions to which no answer is required. To the extent an answer is deemed required, Mylan admits that the Patents-in-Suit are listed in the Orange Book in connection with tapinarof cream, 1%. Mylan denies any and all remaining allegations of this paragraph.

44. In its Notice Letter dated July 22, 2026, Mylan notified Organon that it has submitted to the FDA Mylan's ANDA seeking approval for the commercial manufacture, use, and sale of Mylan's ANDA Product in the United States prior to the expiration of the Patents-in-Suit.

**ANSWER**: Mylan admits that MPI submitted MPI's ANDA to the FDA seeking approval for MPI's ANDA Product. Mylan further admits that MPI sent Organon LLC and Dermavant Sciences GmbH a Notice Letter ("MPI's Notice Letter"), dated July 22, 2026, representing that

MPI had submitted MPI's ANDA to the FDA. Mylan denies any and all remaining allegations of this paragraph.

45. In the Notice Letter, Mylan notified Organon that, as a part of Mylan's ANDA, it had filed a certification under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV) with respect to the Patents-in-Suit, asserting that those patents are invalid, unenforceable and/or will not be infringed by the commercial manufacture, use, and sale of Mylan's ANDA Product in the United States.

**ANSWER**: Mylan admits that MPI's Notice Letter included a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) with respect to the Patents-in-Suit. Mylan denies any and all remaining allegations of this paragraph.

46. By filing Mylan's ANDA, Mylan has necessarily represented to the FDA that, upon approval, Mylan's ANDA Product will have the same active ingredient, method of administration, dosage form, and strength as VTAMA, and will be bioequivalent to VTAMA.

**ANSWER**: Paragraph 46 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, Mylan admits that MPI's ANDA includes data establishing bioequivalence. Mylan denies any and all remaining allegations of this paragraph.

**MYLAN'S ANDA**

47. On information and belief, Mylan's ANDA Product will infringe at least one claim of each of the Patents-in-Suit. Mylan's Notice Letter purported to include an Offer of Confidential Access ("OCA") to certain Mylan confidential information regarding Mylan's ANDA Product. The restrictions in Mylan's purported OCA placed on access to Mylan's ANDA contravene 21 U.S.C. § 355(j)(5)(C)(i)(III), which states that an offer of confidential access "shall contain such restrictions as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information." Accordingly, Plaintiffs state their claims on information and belief based on FDA guidance and representations made by Mylan regarding its ANDA Product. On information and belief, the allegations herein will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

**ANSWER**: Paragraph 47 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, Mylan admits that MPI's Notice Letter included an Offer of Confidential Access ("OCA") pursuant to 21 U.S.C. § 355(j)(5)(C)(i)(III). Mylan denies any and all remaining allegations of this paragraph.

48. On information and belief, Mylan's ANDA Product contains 1% tapinarof in combination with inactive ingredients designed to copy Plaintiffs' patented VTAMA formulation. On information and belief, Mylan's ANDA Product is a topical cream made for the treatment of plaque psoriasis.

**ANSWER**: Paragraph 48 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, Mylan admits that MPI's ANDA Product contains 1% tapinarof. Mylan denies any and all remaining allegations of this paragraph.

49. On information and belief, Mylan has represented to the FDA that its formulation is bioequivalent to VTAMA. In order to demonstrate bioequivalence for a topical formulation, a generic typically must show that there is no significant difference in the active or inactive ingredients or in other aspects of the formulation compared to the reference listed drug such that the local or systemic availability of the active ingredient remains the same. *See* FDA Draft Guidance on Tapinarof (December 2025), https://www.accessdata.fda.gov/drugsatfda_docs/psg/PSG_215272.pdf at 1. In addition, a company typically must show that the generic topical formulation has the same physicochemical and structural attributes of the reference listed drug. *See id.* In addition, an ANDA filer must typically show that their topical tapinarof product has "an equivalent rate of tapinarof release[d]" as the reference listed drug. *See id.* at 2. On information and belief, in order to show bioequivalence, Mylan's ANDA Product must necessarily infringe at least one claim of the Patents-in-Suit including, at least, the '160, '108, '945, and '724 patents. On information and belief, Organon will likely have evidentiary support regarding the bioequivalence of Mylan's ANDA Product after a reasonable opportunity for further investigation or discovery.

**ANSWER**: Paragraph 49 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, Mylan admits that MPI's ANDA includes data establishing bioequivalence. Mylan denies any and all remaining allegations of this paragraph.

50. On information and belief, Mylan's ANDA Product will be sold with a label that is a copy of VTAMA's label except that Mylan does not seek approval to market VTAMA's atopic dermatitis indication. *See* 21 C.F.R. § 314.94(a)(8). Under FDA guidelines, generic drug labels must be the "same as" the last approved reference listed drug ("RLD") labeling minus narrow permissible differences. *See id.* By virtue of copying VTAMA's label, Mylan will be expressly encouraging, promoting, and otherwise inducing others to infringe the uses and treatment methods claimed by the '743, '573, and '088 patents.

**ANSWER**: Paragraph 50 contains legal conclusions to which no answer is required. To the extent an answer is deemed required, Mylan states that the label MPI intends to use for its

ANDA Product is the label submitted as part of MPI's ANDA. Mylan denies any and all remaining allegations of this paragraph.

**COUNT I: INFRINGEMENT OF THE '160 PATENT**

51. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

**ANSWER**: Mylan repeats and incorporates its answers to each of the foregoing paragraphs 1-50 as if fully set forth herein.

52. Mylan's submission of Mylan's ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Mylan's ANDA Product in or into the United States, prior to the expiration of the '160 patent, constitutes infringement of one or more claims of the '160 patent pursuant to 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

53. On information and belief, Mylan's ANDA Product, if approved by the FDA, will be manufactured, used, offered for sale, sold, and/or imported in or into the United States by Mylan or on its behalf, constituting direct infringement of one or more claims of the '160 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

54. Mylan has had knowledge of the '160 patent since at least the date Mylan submitted Mylan's ANDA and was aware that submission of its ANDA constituted an act of infringement under 35 U.S.C. § 271(e)(2). For example, as a generic drug manufacturer, Mylan has knowledge of the Orange Book that lists VTAMA as being protected by the '160 patent. Moreover, Mylan sent a Notice Letter to Organon dated July 22, 2026, certifying that it did not believe the commercial manufacture, use, or sale of its ANDA Product would infringe certain claims of the '160 patent and that the claims of the '160 patent are invalid.

**ANSWER**: Denied.

55. On information and belief, upon approval by the FDA, Mylan's ANDA Product will be administered by patients and/or medical practitioners in the United States according to the directions and instructions in the proposed package insert, which will constitute direct infringement by patients and/or medical practitioners of one or more claims of the '160 patent. On information and belief, such administration will occur with Mylan's specific intent and encouragement, and will be conduct that Mylan knows or should know will occur. On information and belief, Mylan will actively induce, encourage, aid, and abet that conduct by patients and/or medical practitioners, with knowledge and specific intent that the conduct will be in contravention of Plaintiffs' rights under the '160 patent, constituting induced infringement of one or more claims

of the ’160 patent pursuant to 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

56. On information and belief, Mylan’s manufacturing, use, offer for sale, sale, and/or importation of Mylan’s ANDA Product, once Mylan’s ANDA is approved by the FDA, would constitute contributory infringement under 35 U.S.C. § 271(c) of one or more claims of the ’160 patent, either literally or under the doctrine of equivalents. On information and belief, Mylan will sell or offer for sale a material component of the claimed composition to others who will directly infringe the ’160 patent. Also, on information and belief, Mylan knows that Mylan’s ANDA Product, or components thereof, is especially made or adapted for use in infringing the ’160 patent, and that Mylan’s ANDA Product, or components thereof, is not suitable for substantial non-infringing use.

**ANSWER**: Denied.

57. Plaintiffs will be irreparably harmed if Mylan is permitted to make, use, sell, offer to sell, and/or import Mylan’s ANDA Product in or into the United States, and is not enjoined from doing so. Plaintiffs are entitled to relief provided by 35 U.S.C. §§ 271(e)(4) and/or 283, including an order of this Court that the effective date of approval of Mylan’s ANDA be a date that is not earlier than the expiration date of the ’160 patent, or any later expiration of exclusivity for the ’160 patent to which Plaintiffs are or become entitled, and an injunction against such infringement. Plaintiffs do not have an adequate remedy at law.

**ANSWER**: Denied.

## COUNT II: INFRINGEMENT OF THE ’743 PATENT

58. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

**ANSWER**: Mylan repeats and incorporates its answers to each of the foregoing paragraphs 1-57 as if fully set forth herein.

59. Mylan’s submission of Mylan’s ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Mylan’s ANDA Product in or into the United States, prior to the expiration of the ’743 patent, constitutes infringement of one or more claims of the ’743 patent pursuant to 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

60. On information and belief, upon approval by the FDA, Mylan’s ANDA Product will be administered by patients and/or medical practitioners in the United States according to the directions and instructions in the proposed package insert, which will constitute direct

infringement by patients and/or medical practitioners of one or more claims of the ’743 patent, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

61. Mylan has had knowledge of the ’743 patent since at least the date Mylan submitted Mylan’s ANDA and was aware that submission of its ANDA constituted an act of infringement under 35 U.S.C. § 271(e)(2). For example, as a generic drug manufacturer, Mylan has knowledge of the Orange Book that lists VTAMA as being protected by the ’743 patent. Moreover, Mylan sent a Notice Letter to Organon dated July 22, 2026, certifying that it did not believe the commercial manufacture, use, or sale of its ANDA Product would infringe certain claims of the ’743 patent and that the claims of the ’743 patent are invalid.

**ANSWER**: Denied.

62. On information and belief, the administration of Mylan’s ANDA Product by patients and/or medical practitioners in the United States will occur with Mylan’s specific intent and encouragement, and will be conduct that Mylan knows or should know will occur. On information and belief, Mylan will actively induce, encourage, aid, and abet that conduct by patients and/or medical practitioners, with knowledge and specific intent that the conduct will be in contravention of Plaintiffs’ rights under the ’743 patent, constituting induced infringement of one or more claims of the ’743 patent pursuant to 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

63. On information and belief, Mylan’s manufacturing, use, offer for sale, sale, and/or importation of Mylan’s ANDA Product, once Mylan’s ANDA is approved by the FDA, would constitute contributory infringement under 35 U.S.C. § 271(c) of one or more claims of the ’743 patent, either literally or under the doctrine of equivalents. On information and belief, Mylan will sell or offer for sale a material component for use in the method claimed in the ’743 patent to medical practitioners and/or patients who will directly infringe the ’743 patent. Also, on information and belief, Mylan knows that Mylan’s ANDA Product is especially made or adapted for use in infringing the ’743 patent, and that Mylan’s ANDA Product is not suitable for substantial non-infringing use.

**ANSWER**: Denied.

64. Plaintiffs will be irreparably harmed if Mylan is permitted to make, use, sell, offer to sell, and/or import Mylan’s ANDA Product in or into the United States, and is not enjoined from doing so. Plaintiffs are entitled to relief provided by 35 U.S.C. §§ 271(e)(4) and/or 283, including an order of this Court that the effective date of approval of Mylan’s ANDA be a date that is not earlier than the expiration date of the ’743 patent, or any later expiration of exclusivity for the ’743 patent to which Plaintiffs are or become entitled, and an injunction against such infringement. Plaintiffs do not have an adequate remedy at law.

**ANSWER**: Denied.

## COUNT III: INFRINGEMENT OF THE ’649 PATENT

65. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

**ANSWER**: Mylan repeats and incorporates its answers to each of the foregoing paragraphs 1-64 as if fully set forth herein.

66. Mylan’s submission of Mylan’s ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Mylan’s ANDA Product in or into the United States, prior to the expiration of the ’649 patent, constitutes infringement of one or more claims of the ’649 patent pursuant to 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

67. On information and belief, Mylan’s ANDA Product, if approved by the FDA, will be manufactured, used, offered for sale, sold, and/or imported in or into the United States by Mylan or on its behalf, constituting direct infringement of one or more claims of the ’649 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

68. Mylan has had knowledge of the ’649 patent since at least the date Mylan submitted Mylan’s ANDA and was aware that submission of its ANDA constituted an act of infringement under 35 U.S.C. § 271(e)(2). For example, as a generic drug manufacturer, Mylan has knowledge of the Orange Book that lists VTAMA as being protected by the ’649 patent. Moreover, Mylan sent a Notice Letter to Organon dated July 22, 2026, certifying that it did not believe the commercial manufacture, use, or sale of its ANDA Product would infringe the claims of the ’649 patent and that the claims of the ’649 patent are invalid.

**ANSWER**: Denied.

69. On information and belief, upon approval by the FDA, Mylan’s ANDA Product will be administered by patients and/or medical practitioners in the United States according to the directions and instructions in the proposed package insert, which will constitute direct infringement by patients and/or medical practitioners of one or more claims of the ’649 patent. On information and belief, such administration will occur with Mylan’s specific intent and encouragement, and will be conduct that Mylan knows or should know will occur. On information and belief, Mylan will actively induce, encourage, aid, and abet that conduct by patients and/or medical practitioners, with knowledge and specific intent that the conduct will be in contravention of Plaintiffs’ rights under the ’649 patent, constituting induced infringement of one or more claims of the ’649 patent pursuant to 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

70. On information and belief, Mylan's manufacturing, use, offer for sale, sale, and/or importation of Mylan's ANDA Product, once Mylan's ANDA is approved by the FDA, would constitute contributory infringement under 35 U.S.C. § 271(c) of one or more claims of the '649 patent, either literally or under the doctrine of equivalents. On information and belief, Mylan will sell or offer for sale a material component of the claimed invention to others who will directly infringe the '649 patent. Also, on information and belief, Mylan knows that Mylan's ANDA Product, or components thereof, is especially made or adapted for use in infringing the '649 patent, and that Mylan's ANDA Product, or components thereof, is not suitable for substantial non-infringing use.

**ANSWER**: Denied.

71. Plaintiffs will be irreparably harmed if Mylan is permitted to make, use, sell, offer to sell, and/or import Mylan's ANDA Product in or into the United States, and is not enjoined from doing so. Plaintiffs are entitled to relief provided by 35 U.S.C. §§ 271(e)(4) and/or 283, including an order of this Court that the effective date of approval of Mylan's ANDA be a date that is not earlier than the expiration date of the '649 patent, or any later expiration of exclusivity for the '649 patent to which Plaintiffs are or become entitled, and an injunction against such infringement. Plaintiffs do not have an adequate remedy at law.

**ANSWER**: Denied.

**COUNT IV: INFRINGEMENT OF THE '108 PATENT**

72. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

**ANSWER**: Mylan repeats and incorporates its answers to each of the foregoing paragraphs 1-71 as if fully set forth herein.

73. Mylan's submission of Mylan's ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Mylan's ANDA Product in or into the United States, prior to the expiration of the '108 patent, constitutes infringement of one or more claims of the '108 patent pursuant to 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

74. On information and belief, Mylan's ANDA Product, if approved by the FDA, will be manufactured, used, offered for sale, sold, and/or imported in or into the United States by Mylan or on its behalf, constituting direct infringement of one or more claims of the '108 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

75. Mylan has had knowledge of the '108 patent since at least the date Mylan submitted Mylan's ANDA and was aware that submission of its ANDA constituted an act of infringement

under 35 U.S.C. § 271(e)(2). For example, as a generic drug manufacturer, Mylan has knowledge of the Orange Book that lists VTAMA as being protected by the ’108 patent. Moreover, Mylan sent a Notice Letter to Organon dated July 22, 2026, certifying that it did not believe the commercial manufacture, use, or sale of its ANDA Product would infringe a certain claim of the ’108 patent and that the claims of the ’108 patent are invalid.

**ANSWER**: Denied.

76. On information and belief, upon approval by the FDA, Mylan’s ANDA Product will be administered by patients and/or medical practitioners in the United States according to the directions and instructions in the proposed package insert, which will constitute direct infringement by patients and/or medical practitioners of one or more claims of the ’108 patent. On information and belief, such administration will occur with Mylan’s specific intent and encouragement, and will be conduct that Mylan knows or should know will occur. On information and belief, Mylan will actively induce, encourage, aid, and abet that conduct by patients and/or medical practitioners, with knowledge and specific intent that the conduct will be in contravention of Plaintiffs’ rights under the ’108 patent, constituting induced infringement of one or more claims of the ’108 patent pursuant to 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

77. On information and belief, Mylan’s manufacturing, use, offer for sale, sale, and/or importation of Mylan’s ANDA Product, once Mylan’s ANDA is approved by the FDA, would constitute contributory infringement under 35 U.S.C. § 271(c) of one or more claims of the ’108 patent, either literally or under the doctrine of equivalents. On information and belief, Mylan will sell or offer for sale a material component of the claimed composition to others who will directly infringe the ’108 patent. Also, on information and belief, Mylan knows that Mylan’s ANDA Product, or components thereof, is especially made or adapted for use in infringing the ’108 patent, and that Mylan’s ANDA Product, or components thereof, is not suitable for substantial non-infringing use.

**ANSWER**: Denied.

78. Plaintiffs will be irreparably harmed if Mylan is permitted to make, use, sell, offer to sell, and/or import Mylan’s ANDA Product in or into the United States, and is not enjoined from doing so. Plaintiffs are entitled to relief provided by 35 U.S.C. §§ 271(e)(4) and/or 283, including an order of this Court that the effective date of approval of Mylan’s ANDA be a date that is not earlier than the expiration date of the ’108 patent, or any later expiration of exclusivity for the ’108 patent to which Plaintiffs are or become entitled, and an injunction against such infringement. Plaintiffs do not have an adequate remedy at law.

**ANSWER**: Denied.

**COUNT V: INFRINGEMENT OF THE ’088 PATENT**

79. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

**ANSWER**: Mylan repeats and incorporates its answers to each of the foregoing paragraphs 1-78 as if fully set forth herein.

80. Mylan's submission of Mylan's ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Mylan's ANDA Product in or into the United States, prior to the expiration of the '088 patent, constitutes infringement of one or more claims of the '088 patent pursuant to 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

81. On information and belief, upon approval by the FDA, Mylan's ANDA Product will be administered by patients and/or medical practitioners in the United States according to the directions and instructions in the proposed package insert, which will constitute direct infringement by patients and/or medical practitioners of one or more claims of the '088 patent, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

82. Mylan has had knowledge of the '088 patent since at least the date Mylan submitted Mylan's ANDA and was aware that submission of its ANDA constituted an act of infringement under 35 U.S.C. § 271(e)(2). For example, as a generic drug manufacturer, Mylan has knowledge of the Orange Book that lists VTAMA as being protected by the '088 patent. Moreover, Mylan sent a Notice Letter to Organon dated July 22, 2026, certifying that it did not believe the commercial manufacture, use, or sale of its ANDA Product would infringe certain claims of the '088 patent and that the claims of the '088 patent are invalid.

**ANSWER**: Denied.

83. On information and belief, upon approval by the FDA, the administration of Mylan's ANDA Product by patients and/or medical practitioners in the United States will occur with Mylan's specific intent and encouragement, and will be conduct that Mylan knows or should know will occur. On information and belief, Mylan will actively induce, encourage, aid, and abet that conduct by patients and/or medical practitioners, with knowledge and specific intent that the conduct will be in contravention of Plaintiffs' rights under the '088 patent, constituting induced infringement of one or more claims of the '088 patent pursuant to 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

84. On information and belief, Mylan's manufacturing, use, offer for sale, sale, and/or importation of Mylan's ANDA Product, once Mylan's ANDA is approved by the FDA, would constitute contributory infringement under 35 U.S.C. § 271(c) of one or more claims of the '088 patent, either literally or under the doctrine of equivalents. On information and belief, Mylan will sell or offer for sale a material component for use in the method of treatment claimed in the '088 patent to medical practitioners and/or patients who will directly infringe the '088 patent.

Also, on information and belief, Mylan knows that Mylan's ANDA Product is especially made or adapted for use in infringing the '088 patent, and that Mylan's ANDA Product is not suitable for substantial non-infringing use.

**ANSWER**: Denied.

85. Plaintiffs will be irreparably harmed if Mylan is permitted to make, use, sell, offer to sell, and/or import Mylan's ANDA Product in or into the United States, and is not enjoined from doing so. Plaintiffs are entitled to relief provided by 35 U.S.C. §§ 271(e)(4) and/or 283, including an order of this Court that the effective date of approval of Mylan's ANDA be a date that is not earlier than the expiration date of the '088 patent, or any later expiration of exclusivity for the '088 patent to which Plaintiffs are or become entitled, and an injunction against such infringement. Plaintiffs do not have an adequate remedy at law.

**ANSWER**: Denied.

**COUNT VI: INFRINGEMENT OF THE '692 PATENT**

86. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

**ANSWER**: Mylan repeats and incorporates its answers to each of the foregoing paragraphs 1-85 as if fully set forth herein.

87. Mylan's submission of Mylan's ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Mylan's ANDA Product in or into the United States, prior to the expiration of the '692 patent, constitutes infringement of one or more claims of the '692 patent pursuant to 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

88. On information and belief, Mylan's ANDA Product, if approved by the FDA, will be manufactured, used, offered for sale, sold, and/or imported in or into the United States by Mylan or on its behalf, constituting direct infringement of one or more claims of the '692 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

89. Mylan has had knowledge of the '692 patent since at least the date Mylan submitted Mylan's ANDA and was aware that submission of its ANDA constituted an act of infringement under 35 U.S.C. § 271(e)(2). For example, as a generic drug manufacturer, Mylan has knowledge of the Orange Book that lists VTAMA as being protected by the '692 patent. Moreover, Mylan sent a Notice Letter to Organon dated July 22, 2026, certifying that it did not believe the commercial manufacture, use, or sale of its ANDA Product would infringe the claims of the '692 patent and that the claims of the '692 patent are invalid.

**ANSWER**: Denied.

90. On information and belief, upon approval by the FDA, Mylan's ANDA Product will be administered by patients and/or medical practitioners in the United States according to the directions and instructions in the proposed package insert, which will constitute direct infringement by patients and/or medical practitioners of one or more claims of the '692 patent. On information and belief, such administration will occur with Mylan's specific intent and encouragement, and will be conduct that Mylan knows or should know will occur. On information and belief, Mylan will actively induce, encourage, aid, and abet that conduct by patients and/or medical practitioners, with knowledge and specific intent that the conduct will be in contravention of Plaintiffs' rights under the '692 patent, constituting induced infringement of one or more claims of the '692 patent pursuant to 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

91. On information and belief, Mylan's manufacturing, use, offer for sale, sale, and/or importation of Mylan's ANDA Product, once Mylan's ANDA is approved by the FDA, would constitute contributory infringement under 35 U.S.C. § 271(c) of one or more claims of the '692 patent, either literally or under the doctrine of equivalents. On information and belief, Mylan will sell or offer for sale a material component of the claimed invention to others who will directly infringe the '692 patent. Also, on information and belief, Mylan knows that Mylan's ANDA Product, or components thereof, is especially made or adapted for use in infringing the '692 patent, and that Mylan's ANDA Product, or components thereof, is not suitable for substantial non-infringing use.

**ANSWER**: Denied.

92. Plaintiffs will be irreparably harmed if Mylan is permitted to make, use, sell, offer to sell, and/or import Mylan's ANDA Product in or into the United States, and is not enjoined from doing so. Plaintiffs are entitled to relief provided by 35 U.S.C. §§ 271(e)(4) and/or 283, including an order of this Court that the effective date of approval of Mylan's ANDA be a date that is not earlier than the expiration date of the '692 patent, or any later expiration of exclusivity for the '692 patent to which Plaintiffs are or become entitled, and an injunction against such infringement. Plaintiffs do not have an adequate remedy at law.

**ANSWER**: Denied.

**COUNT VII: INFRINGEMENT OF THE '573 PATENT**

93. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

**ANSWER**: Mylan repeats and incorporates its answers to each of the foregoing paragraphs 1-92 as if fully set forth herein.

94. Mylan's submission of Mylan's ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Mylan's ANDA Product in or into the United States, prior to the expiration of the '573 patent, constitutes infringement of one or more claims of the '573 patent pursuant to 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

95. On information and belief, upon approval by the FDA, Mylan's ANDA Product will be administered by patients and/or medical practitioners in the United States according to the directions and instructions in the proposed package insert, which will constitute direct infringement by patients and/or medical practitioners of one or more claims of the '573 patent, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

96. Mylan has had knowledge of the '573 patent since at least the date Mylan submitted Mylan's ANDA and was aware that submission of its ANDA constituted an act of infringement under 35 U.S.C. § 271(e)(2). For example, as a generic drug manufacturer, Mylan has knowledge of the Orange Book that lists VTAMA as being protected by the '573 patent. Moreover, Mylan sent a Notice Letter to Organon dated July 22, 2026, certifying that it did not believe the commercial manufacture, use, or sale of its ANDA Product would infringe the claims of the '573 patent and that the claims of the '573 patent are invalid.

**ANSWER**: Denied.

97. On information and belief, the administration of Mylan's ANDA Product by patients and/or medical practitioners in the United States will occur with Mylan's specific intent and encouragement, and will be conduct that Mylan knows or should know will occur. On information and belief, Mylan will actively induce, encourage, aid, and abet that conduct by patients and/or medical practitioners, with knowledge and specific intent that the conduct will be in contravention of Plaintiffs' rights under the '573 patent, constituting induced infringement of one or more claims of the '573 patent pursuant to 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

98. On information and belief, Mylan's manufacturing, use, offer for sale, sale, or importation of Mylan's ANDA Product, once Mylan's ANDA is approved by the FDA, would constitute contributory infringement under 35 U.S.C. § 271(c) of one or more claims of the '573 patent, either literally or under the doctrine of equivalents. On information and belief, Mylan will sell or offer for sale a material component for use in the method claimed in the '573 patent to medical practitioners and/or patients who will directly infringe the '573 patent. Also, on information and belief, Mylan knows that Mylan's ANDA Product is especially made or adapted for use in infringing the '573 patent, and that Mylan's ANDA Product is not suitable for substantial non-infringing use.

**ANSWER**: Denied.

99. Plaintiffs will be irreparably harmed if Mylan is permitted to make, use, sell, offer to sell, and/or import Mylan's ANDA Product in or into the United States, and is not enjoined from doing so. Plaintiffs are entitled to relief provided by 35 U.S.C. §§ 271(e)(4) and/or 283, including an order of this Court that the effective date of approval of Mylan's ANDA be a date that is not earlier than the expiration date of the '573 patent, or any later expiration of exclusivity for the '573 patent to which Plaintiffs are or become entitled, and an injunction against such infringement. Plaintiffs do not have an adequate remedy at law.

**ANSWER**: Denied.

**COUNT VIII: INFRINGEMENT OF THE '724 PATENT**

100. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

**ANSWER**: Mylan repeats and incorporates its answers to each of the foregoing paragraphs 1-99 as if fully set forth herein.

101. Mylan's submission of Mylan's ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Mylan's ANDA Product in or into the United States, prior to the expiration of the '724 patent, constitutes infringement of one or more claims of the '724 patent pursuant to 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

102. On information and belief, Mylan's ANDA Product, if approved by the FDA, will be manufactured, used, offered for sale, sold, and/or imported in or into the United States by Mylan or on its behalf, constituting direct infringement of one or more claims of the '724 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

103. Mylan has had knowledge of the '724 patent since at least the date Mylan submitted Mylan's ANDA and was aware that submission of its ANDA constituted an act of infringement under 35 U.S.C. § 271(e)(2). For example, as a generic drug manufacturer, Mylan has knowledge of the Orange Book that lists VTAMA as being protected by the '724 patent. Moreover, Mylan sent a Notice Letter to Organon dated July 22, 2026, certifying that it did not believe the commercial manufacture, use, or sale of its ANDA Product would infringe a certain claim of the '724 patent and that the claims of the '724 patent are invalid.

**ANSWER**: Denied.

104. On information and belief, upon approval by the FDA, Mylan's ANDA Product will be administered by patients and/or medical practitioners in the United States according to the

directions and instructions in the proposed package insert, which will constitute direct infringement by patients and/or medical practitioners of one or more claims of the ’724 patent. On information and belief, such administration will occur with Mylan’s specific intent and encouragement, and will be conduct that Mylan knows or should know will occur. On information and belief, Mylan will actively induce, encourage, aid, and abet that conduct by patients and/or medical practitioners, with knowledge and specific intent that the conduct will be in contravention of Plaintiffs’ rights under the ’724 patent, constituting induced infringement of one or more claims of the ’724 patent pursuant to 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

105. On information and belief, Mylan’s manufacturing, use, offer for sale, sale, and/or importation of Mylan’s ANDA Product, once Mylan’s ANDA is approved by the FDA, would constitute contributory infringement under 35 U.S.C. § 271(c) of one or more claims of the ’724 patent, either literally or under the doctrine of equivalents. On information and belief, Mylan will sell or offer for sale a material component of the claimed composition to others who will directly infringe the ’724 patent. Also, on information and belief, Mylan knows that Mylan’s ANDA Product, or components thereof, is especially made or adapted for use in infringing the ’724 patent, and that Mylan’s ANDA Product, or components thereof, is not suitable for substantial non-infringing use.

**ANSWER**: Denied.

106. Plaintiffs will be irreparably harmed if Mylan is permitted to make, use, sell, offer to sell, and/or import Mylan’s ANDA Product in or into the United States, and is not enjoined from doing so. Plaintiffs are entitled to relief provided by 35 U.S.C. §§ 271(e)(4) and/or 283, including an order of this Court that the effective date of approval of Mylan’s ANDA be a date that is not earlier than the expiration date of the ’724 patent, or any later expiration of exclusivity for the ’724 patent to which Plaintiffs are or become entitled, and an injunction against such infringement. Plaintiffs do not have an adequate remedy at law.

**ANSWER**: Denied.

**COUNT IX: INFRINGEMENT OF THE ’945 PATENT**

107. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

**ANSWER**: Mylan repeats and incorporates its answers to each of the foregoing paragraphs 1-106 as if fully set forth herein.

108. Mylan’s submission of Mylan’s ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Mylan’s ANDA Product in or into the United States, prior to the expiration of the ’945 patent, constitutes infringement of one or more claims of the ’945 patent pursuant to 35 U.S.C. § 271(e)(2)(A), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

109. On information and belief, Mylan's ANDA Product, if approved by the FDA, will be manufactured, used, offered for sale, sold, and/or imported in or into the United States by Mylan or on its behalf, constituting direct infringement of one or more claims of the '945 patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

110. Mylan has had knowledge of the '945 patent since at least the date Mylan submitted Mylan's ANDA and was aware that submission of its ANDA constituted an act of infringement under 35 U.S.C. § 271(e)(2). For example, as a generic drug manufacturer, Mylan has knowledge of the Orange Book that lists VTAMA as being protected by the '945 patent. Moreover, Mylan sent a Notice Letter to Organon dated July 22, 2026, certifying that it did not believe the commercial manufacture, use, or sale of its ANDA Product would infringe a certain claim of the '945 patent and that the claims of the '945 patent are invalid.

**ANSWER**: Denied.

111. On information and belief, upon approval by the FDA, Mylan's ANDA Product will be administered by patients and/or medical practitioners in the United States according to the directions and instructions in the proposed package insert, which will constitute direct infringement by patients and/or medical practitioners of one or more claims of the '945 patent. On information and belief, such administration will occur with Mylan's specific intent and encouragement, and will be conduct that Mylan knows or should know will occur. On information and belief, Mylan will actively induce, encourage, aid, and abet that conduct by patients and/or medical practitioners, with knowledge and specific intent that the conduct will be in contravention of Plaintiffs' rights under the '945 patent, constituting induced infringement of one or more claims of the '945 patent pursuant to 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

**ANSWER**: Denied.

112. On information and belief, Mylan's manufacturing, use, offer for sale, sale, and/or importation of Mylan's ANDA Product, once Mylan's ANDA is approved by the FDA, would constitute contributory infringement under 35 U.S.C. § 271(c) of one or more claims of the '945 patent, either literally or under the doctrine of equivalents. On information and belief, Mylan will sell or offer for sale a material component of the claimed composition to others who will directly infringe the '945 patent. Also, on information and belief, Mylan knows that Mylan's ANDA Product, or components thereof, is especially made or adapted for use in infringing the '945 patent, and that Mylan's ANDA Product, or components thereof, is not suitable for substantial non-infringing use.

**ANSWER**: Denied.

113. Plaintiffs will be irreparably harmed if Mylan is permitted to make, use, sell, offer to sell, and/or import Mylan's ANDA Product in or into the United States, and is not enjoined from

doing so. Plaintiffs are entitled to relief provided by 35 U.S.C. §§ 271(e)(4) and/or 283, including an order of this Court that the effective date of approval of Mylan's ANDA be a date that is not earlier than the expiration date of the '945 patent, or any later expiration of exclusivity for the '945 patent to which Plaintiffs are or become entitled, and an injunction against such infringement. Plaintiffs do not have an adequate remedy at law.

**ANSWER**: Denied.

## RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

All remaining allegations not specifically admitted are herein denied. It is further denied that Plaintiffs are entitled to the relief requested in the Complaint or to any other relief whatsoever.

## SEPARATE DEFENSES

Without prejudice to the denials set forth in its Answer, and without admitting any allegations of the Complaint not expressly admitted, Mylan asserts the following separate defenses to the Complaint without assuming the burden of proof on any such defense that would otherwise rest with Plaintiffs.

## FIRST SEPARATE DEFENSE

Mylan has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the Patents-in-Suit, for at least the reasons stated in MPI's Notice Letter.

## SECOND SEPARATE DEFENSE

The claims of the Patents-in-Suit are invalid and/or unenforceable for failure to satisfy one or more of the conditions and requirements for patentability set forth in one or more provisions of 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, double patenting, the defenses recognized in 35 U.S.C. § 282(b), and/or under any other judicially created bases for invalidation.

## THIRD SEPARATE DEFENSE

Dermavant disclaimed claims 1-4, 6-10, 16, 18, and 21-22 of the '088 patent. *See Encube Ethicals Pvt. Ltd. v. Dermavant Scis. GmbH*, No. IPR2024-00834, Paper 23 (P.T.A.B. Mar. 7,

2025). Plaintiffs are collaterally estopped and/or precluded from asserting claims 1-4, 6-10, 16, 18, and 21-22 of the ’088 patent against Mylan.

**FOURTH SEPARATE DEFENSE**

The Complaint fails to state a claim upon which relief can be granted.

**FIFTH SEPARATE DEFENSE**

Plaintiffs are estopped from asserting infringement under the doctrine of equivalents by the doctrine of prosecution history estoppel, the dedication disclosure rule, and/or other equitable defenses.

**SIXTH SEPARATE DEFENSE**

The Complaint fails to state a claim for an exceptional case under 35 U.S.C. § 285.

**SEVENTH SEPARATE DEFENSE**

Mylan has not willfully infringed any claim of the Patents-in-Suit.

**EIGHTH SEPARATE DEFENSE**

Mylan reserves all defenses, at law or in equity, that may now exist or that in the future may become available based on discovery and further factual investigation in this case. Mylan further reserves the right to supplement and/or amend these defenses.

**COUNTERCLAIMS**

For its counterclaims against Plaintiffs Organon LLC, Organon International GmbH, and Dermavant Sciences GmbH (“Counterclaim Defendants”), Mylan Pharmaceuticals Inc. (“MPI”) states as follows:

## NATURE OF THE ACTION

1. This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et. seq.*, the Hatch-Waxman Act, 21 U.S.C. §§ 355(j) *et. seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2. These counterclaims are for declaratory judgment of non-infringement and invalidity of U.S. Patent Nos. 10,195,160 (the "'160 patent"), 10,426,743 (the "'743 patent"), 10,647,649 (the "'649 patent"), 11,458,108 (the "'108 patent"), 11,590,088 (the "'088 patent"), 11,597,692 (the "'692 patent"), 11,612,573 (the "'573 patent"), 11,617,724 (the "'724 patent"), and 11,622,945 (the "'945 patent"), (collectively, the "Counterclaim Patents").

3. MPI seeks a declaratory judgment that the claims of the Counterclaim Patents are invalid and/or not infringed by the product that is the subject of MPI's ANDA No. 221179 ("MPI's ANDA").

## PARTIES

4. Mylan Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the State of West Virginia, with its principal place of business at 3711 Collins Ferry Road, Morgantown, West Virginia 26505.

5. Upon information and belief, and according to the allegations of the Complaint, Organon LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 30 Hudson Street, 33rd Floor, Jersey City, NJ 07302.

6. Upon information and belief, and according to the allegations of the Complaint, Organon International GmbH is a corporation organized and existing under the laws of Switzerland with its principal place of business at Weystrasse 20, 6006 Lucerne, Switzerland.

7. Upon information and belief, and according to the allegations of the Complaint, Dermavant Sciences GmbH is a corporation organized and existing under the laws of Switzerland with its principal place of business at Weystrasse 20, 6006 Lucerne, Switzerland.

## **JURISDICTION AND VENUE**

8. These counterclaims arise under the patent laws of the United States and the Declaratory Judgment Act. This Court has subject matter jurisdiction over these counterclaims under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

9. This Court has personal jurisdiction over Counterclaim Defendants on the basis of, *inter alia*, their contacts with West Virginia relating to the subject matter of this action, including having filed suit against MPI in this judicial district.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Counterclaim Defendants commenced and continue to maintain this action against MPI in this judicial district.

## **FACTUAL BACKGROUND**

11. Upon information and belief, and based on the allegations of the Complaint, on February 5, 2019, the ’160 patent, entitled “Topical pharmaceutical compositions,” was issued to Dermavant Sciences GmbH as assignee. A copy of the ’160 patent is attached to the Complaint as Exhibit 1.

12. Upon information and belief, and based on the allegations of the Complaint, on October 1, 2019, the ’743 patent, entitled “Topical pharmaceutical compositions,” was issued to Dermavant Sciences GmbH as assignee. A copy of the ’743 patent is attached to the Complaint as Exhibit 2.

13. Upon information and belief, and based on the allegations of the Complaint, on May 12, 2020, the ’649 patent, entitled “Process for preparing tapinarof,” was issued to Dermavant Sciences GmbH as assignee. A copy of the ’649 patent is attached to the Complaint as Exhibit 3.

14. Upon information and belief, and based on the allegations of the Complaint, on October 4, 2022, the ’108 patent, entitled “Topical pharmaceutical compositions,” was issued to Dermavant Sciences GmbH as assignee. A copy of the ’108 patent is attached to the Complaint as Exhibit 4.

15. Upon information and belief, and based on the allegations of the Complaint, on February 28, 2023, the ’088 patent, entitled “Use of tapinarof for the treatment of chronic plaque psoriasis,” was issued to Dermavant Sciences GmbH as assignee. A copy of the ’088 patent is attached to the Complaint as Exhibit 5. Further, upon information and belief, and based on the allegations of the Complaint, on January 28, 2025, Dermavant Sciences GmbH disclaimed claims 1-4, 6-10, 16, 18, and 21-22 of the ’088 patent.

16. Upon information and belief, and based on the allegations of the Complaint, on March 7, 2023, the ’692 patent, entitled “Process for preparing tapinarof,” was issued to Dermavant Sciences GmbH as assignee. A copy of the ’692 patent is attached to the Complaint as Exhibit 6.

17. Upon information and belief, and based on the allegations of the Complaint, on March 28, 2023, the ’573 patent, entitled “Topical pharmaceutical compositions,” was issued to Dermavant Sciences GmbH as assignee. A copy of the ’573 patent is attached to the Complaint as Exhibit 7.

18. Upon information and belief, and based on the allegations of the Complaint, on April 4, 2023, the ’724 patent, entitled “Topical pharmaceutical compositions,” was issued to

Dermavant Sciences GmbH as assignee. A copy of the ’724 patent is attached to the Complaint as Exhibit 8.

19. Upon information and belief, and based on the allegations of the Complaint, on April 11, 2023, the ’945 patent, entitled “Topical pharmaceutical compositions,” was issued to Dermavant Sciences GmbH as assignee. A copy of the ’945 patent is attached to the Complaint as Exhibit 9.

20. Upon information and belief, and based on the allegations of the Complaint, Organon is the holder of NDA No. 215272 for tapinarof cream, 1% which is prescribed and sold under the trade name VTAMA.

21. MPI filed MPI’s ANDA seeking FDA approval for MPI’s tapinarof cream, 1% product (“MPI’s ANDA Product”).

22. By letter dated July 22, 2026 (“MPI’s Notice Letter”), MPI notified Counterclaim Defendants in writing that it had filed MPI’s ANDA containing a certification as to the Counterclaim Patents (“Paragraph IV Certification”) pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV).

23. Counterclaim Defendants have accused MPI of infringing claims of the Counterclaim Patents in connection with MPI’s ANDA.

**COUNT I:**
**(Declaratory Judgment of Non-Infringement of the ’160 Patent)**

24. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

25. MPI’s ANDA Product has not infringed, will not infringe, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the ’160 patent for at least the reasons detailed in MPI’s Notice Letter.

26. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI's ANDA Product is infringing the claims of the '160 patent and will continue to interfere with MPI's business with respect to MPI's ANDA Product.

27. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the '160 patent and from interfering with MPI's business.

28. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning MPI's noninfringement of the '160 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

29. MPI is entitled to declaratory judgment that MPI's ANDA Product has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '160 patent.

**COUNT II:**
**(Declaratory Judgment of Invalidity of the '160 Patent)**

30. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

31. The claims of the '160 patent are invalid for failure to meet one or more of the conditions of patentability specified in Title 35 of the United States Code.

32. The alleged invention(s) of the '160 patent do no more than combine familiar elements according to known methods to yield predictable results. Any alleged improvement over the prior art set forth in the '160 patent is no more than the predictable use of prior art elements according to their established functions. A person of skill in the art would have been motivated to combine the teachings of the prior art to achieve the alleged invention of the '160 patent and would have had a reasonable expectation of success in doing so.

33. The claims of the ’160 patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. The differences between the subject matter claimed in the ’160 patent and the prior art are such that the subject matter as a whole was either fully anticipated by the prior art or would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

34. The claims of the ’160 patent are invalid at least under 35 U.S.C. § 112 for lack of enablement, adequate written description, and as indefinite, and therefore invalid.

35. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI’s ANDA Product is infringing the claims of the ’160 patent and will continue to interfere with MPI’s business with respect to MPI’s ANDA Product.

36. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the ’160 patent and from interfering with MPI’s business.

37. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning the invalidity of the ’160 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

38. MPI is entitled to a declaratory judgment that the claims of the ’160 patent are invalid.

**COUNT III:**
**(Declaratory Judgment of Non-Infringement of the ’743 Patent)**

39. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

40. MPI's ANDA Product has not infringed, will not infringe, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '743 patent for at least the reasons detailed in MPI's Notice Letter.

41. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI's ANDA Product is infringing the claims of the '743 patent and will continue to interfere with MPI's business with respect to MPI's ANDA Product.

42. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the '743 patent and from interfering with MPI's business.

43. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning MPI's noninfringement of the '743 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

44. MPI is entitled to declaratory judgment that MPI's ANDA Product has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '743 patent.

**COUNT IV:**
**(Declaratory Judgment of Invalidity of the '743 Patent)**

45. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

46. The claims of the '743 patent are invalid for failure to meet one or more of the conditions of patentability specified in Title 35 of the United States Code.

47. The alleged invention(s) of the '743 patent do no more than combine familiar elements according to known methods to yield predictable results. Any alleged improvement over the prior art set forth in the '743 patent is no more than the predictable use of prior art elements according to their established functions. A person of skill in the art would have been motivated to

combine the teachings of the prior art to achieve the alleged invention of the ’743 patent and would have had a reasonable expectation of success in doing so.

48. The claims of the ’743 patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. The differences between the subject matter claimed in the ’743 patent and the prior art are such that the subject matter as a whole was either fully anticipated by the prior art or would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

49. The claims of the ’743 patent are invalid at least under 35 U.S.C. § 112 for lack of enablement, adequate written description, and as indefinite, and therefore invalid.

50. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI’s ANDA Product is infringing the claims of the ’743 patent and will continue to interfere with MPI’s business with respect to MPI’s ANDA Product.

51. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the ’743 patent and from interfering with MPI’s business.

52. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning the invalidity of the ’743 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

53. MPI is entitled to a declaratory judgment that the claims of the ’743 patent are invalid.

**COUNT V:**
**(Declaratory Judgment of Non-Infringement of the ’649 Patent)**

54. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

55. MPI's ANDA Product has not infringed, will not infringe, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '649 patent for at least the reasons detailed in MPI's Notice Letter.

56. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI's ANDA Product is infringing the claims of the '649 patent and will continue to interfere with MPI's business with respect to MPI's ANDA Product.

57. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the '649 patent and from interfering with MPI's business.

58. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning MPI's noninfringement of the '649 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

59. MPI is entitled to declaratory judgment that MPI's ANDA Product has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '649 patent.

**COUNT VI:**
**(Declaratory Judgment of Invalidity of the '649 Patent)**

60. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

61. The claims of the '649 patent are invalid for failure to meet one or more of the conditions of patentability specified in Title 35 of the United States Code.

62. The alleged invention(s) of the '649 patent do no more than combine familiar elements according to known methods to yield predictable results. Any alleged improvement over the prior art set forth in the '649 patent is no more than the predictable use of prior art elements according to their established functions. A person of skill in the art would have been motivated to

combine the teachings of the prior art to achieve the alleged invention of the ’649 patent and would have had a reasonable expectation of success in doing so.

63. The claims of the ’649 patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. The differences between the subject matter claimed in the ’649 patent and the prior art are such that the subject matter as a whole was either fully anticipated by the prior art or would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

64. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI’s ANDA Product is infringing the claims of the ’649 patent and will continue to interfere with MPI’s business with respect to MPI’s ANDA Product.

65. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the ’649 patent and from interfering with MPI’s business.

66. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning the invalidity of the ’649 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

67. MPI is entitled to a declaratory judgment that the claims of the ’649 patent are invalid.

**COUNT VII:**
**(Declaratory Judgment of Non-Infringement of the ’108 Patent)**

68. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

69. MPI's ANDA Product has not infringed, will not infringe, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '108 patent for at least the reasons detailed in MPI's Notice Letter.

70. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI's ANDA Product is infringing the claims of the '108 patent and will continue to interfere with MPI's business with respect to MPI's ANDA Product.

71. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the '108 patent and from interfering with MPI's business.

72. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning MPI's noninfringement of the '108 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

73. MPI is entitled to declaratory judgment that MPI's ANDA Product has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '108 patent.

**COUNT VIII:**
**(Declaratory Judgment of Invalidity of the '108 Patent)**

74. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

75. The claims of the '108 patent are invalid for failure to meet one or more of the conditions of patentability specified in Title 35 of the United States Code.

76. The alleged invention(s) of the '108 patent do no more than combine familiar elements according to known methods to yield predictable results. Any alleged improvement over the prior art set forth in the '108 patent is no more than the predictable use of prior art elements according to their established functions. A person of skill in the art would have been motivated to

combine the teachings of the prior art to achieve the alleged invention of the ’108 patent and would have had a reasonable expectation of success in doing so.

77. The claims of the ’108 patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. The differences between the subject matter claimed in the ’108 patent and the prior art are such that the subject matter as a whole was either fully anticipated by the prior art or would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

78. The claims of the ’108 patent are invalid at least under 35 U.S.C. § 112 for lack of enablement, adequate written description, and as indefinite, and therefore invalid.

79. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI’s ANDA Product is infringing the claims of the ’108 patent and will continue to interfere with MPI’s business with respect to MPI’s ANDA Product.

80. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the ’108 patent and from interfering with MPI’s business.

81. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning the invalidity of the ’108 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

82. MPI is entitled to a declaratory judgment that the claims of the ’108 patent are invalid.

**COUNT IX:**
**(Declaratory Judgment of Non-Infringement of the ’088 Patent)**

83. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

84. MPI's ANDA Product has not infringed, will not infringe, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '088 patent for at least the reasons detailed in MPI's Notice Letter.

85. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI's ANDA Product is infringing the claims of the '088 patent and will continue to interfere with MPI's business with respect to MPI's ANDA Product.

86. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the '088 patent and from interfering with MPI's business.

87. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning MPI's noninfringement of the '088 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

88. MPI is entitled to declaratory judgment that MPI's ANDA Product has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '088 patent.

**COUNT X:**
**(Declaratory Judgment of Invalidity of the '088 Patent)**

89. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

90. The claims of the '088 patent are invalid for failure to meet one or more of the conditions of patentability specified in Title 35 of the United States Code.

91. The alleged invention(s) of the '088 patent do no more than combine familiar elements according to known methods to yield predictable results. Any alleged improvement over the prior art set forth in the '088 patent is no more than the predictable use of prior art elements according to their established functions. A person of skill in the art would have been motivated to

combine the teachings of the prior art to achieve the alleged invention of the ’088 patent and would have had a reasonable expectation of success in doing so.

92. The claims of the ’088 patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. The differences between the subject matter claimed in the ’088 patent and the prior art are such that the subject matter as a whole was either fully anticipated by the prior art or would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

93. The claims of the ’088 patent are invalid at least under 35 U.S.C. § 112 as indefinite, and therefore invalid.

94. Dermavant disclaimed claims 1-4, 6-10, 16, 18, and 21-22 of the ’088 patent. *See Encube Ethicals Pvt. Ltd. v. Dermavant Scis. GmbH*, No. IPR2024-00834, Paper 23 (P.T.A.B. Mar. 7, 2025).

95. Under 35 U.S.C. § 253, a statutory disclaimer has the effect of canceling the disclaimed claims from the patent. Once disclaimed, the claims are treated as though they never existed. *See Guinn v. Kopf*, 96 F.3d 1419, 1422 (Fed. Cir. 1996) (citing *Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp.*, 294 U.S. 477, 492 (1935) (“Upon the filing of the disclaimers, the original claims were withdrawn from the protection of the patent laws, and the public was entitled to manufacture and use the device originally claimed as freely as though it had been abandoned.”)).

96. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI’s ANDA Product is infringing the claims of the ’088 patent and will continue to interfere with MPI’s business with respect to MPI’s ANDA Product.

97. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the ’088 patent and from interfering with MPI’s business.

98. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning the invalidity of the ’088 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

99. MPI is entitled to a declaratory judgment that the claims of the ’088 patent are invalid.

**COUNT XI:**
**(Declaratory Judgment of Non-Infringement of the ’692 Patent)**

100. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

101. MPI’s ANDA Product has not infringed, will not infringe, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the ’692 patent for at least the reasons detailed in MPI’s Notice Letter.

102. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI’s ANDA Product is infringing the claims of the ’692 patent and will continue to interfere with MPI’s business with respect to MPI’s ANDA Product.

103. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the ’692 patent and from interfering with MPI’s business.

104. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning MPI’s noninfringement of the ’692 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

105. MPI is entitled to declaratory judgment that MPI's ANDA Product has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the ’692 patent.

**COUNT XII:**
**(Declaratory Judgment of Invalidity of the ’692 Patent)**

106. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

107. The claims of the ’692 patent are invalid for failure to meet one or more of the conditions of patentability specified in Title 35 of the United States Code.

108. The alleged invention(s) of the ’692 patent do no more than combine familiar elements according to known methods to yield predictable results. Any alleged improvement over the prior art set forth in the ’692 patent is no more than the predictable use of prior art elements according to their established functions. A person of skill in the art would have been motivated to combine the teachings of the prior art to achieve the alleged invention of the ’692 patent and would have had a reasonable expectation of success in doing so.

109. The claims of the ’692 patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. The differences between the subject matter claimed in the ’692 patent and the prior art are such that the subject matter as a whole was either fully anticipated by the prior art or would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

110. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI's ANDA Product is infringing the claims of the ’692 patent and will continue to interfere with MPI's business with respect to MPI's ANDA Product.

111. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the ’692 patent and from interfering with MPI’s business.

112. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning the invalidity of the ’692 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

113. MPI is entitled to a declaratory judgment that the claims of the ’692 patent are invalid.

**COUNT XIII:**
**(Declaratory Judgment of Non-Infringement of the ’573 Patent)**

114. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

115. MPI’s ANDA Product has not infringed, will not infringe, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the ’573 patent for at least the reasons detailed in MPI’s Notice Letter.

116. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI’s ANDA Product is infringing the claims of the ’573 patent and will continue to interfere with MPI’s business with respect to MPI’s ANDA Product.

117. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the ’573 patent and from interfering with MPI’s business.

118. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning MPI’s noninfringement of the ’573 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

119. MPI is entitled to declaratory judgment that MPI's ANDA Product has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '573 patent.

**COUNT XIV:**
**(Declaratory Judgment of Invalidity of the '573 Patent)**

120. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

121. The claims of the '573 patent are invalid for failure to meet one or more of the conditions of patentability specified in Title 35 of the United States Code.

122. The alleged invention(s) of the '573 patent do no more than combine familiar elements according to known methods to yield predictable results. Any alleged improvement over the prior art set forth in the '573 patent is no more than the predictable use of prior art elements according to their established functions. A person of skill in the art would have been motivated to combine the teachings of the prior art to achieve the alleged invention of the '573 patent and would have had a reasonable expectation of success in doing so.

123. The claims of the '573 patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. The differences between the subject matter claimed in the '573 patent and the prior art are such that the subject matter as a whole was either fully anticipated by the prior art or would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

124. The claims of the '573 patent are invalid at least under 35 U.S.C. § 112 for lack of enablement, adequate written description, and as indefinite, and therefore invalid.

125. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI's ANDA Product is infringing the claims of the '573 patent and will continue to interfere with MPI's business with respect to MPI's ANDA Product.

126. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the '573 patent and from interfering with MPI's business.

127. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning the invalidity of the '573 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

128. MPI is entitled to a declaratory judgment that the claims of the '573 patent are invalid.

**COUNT XV:**
**(Declaratory Judgment of Non-Infringement of the '724 Patent)**

129. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

130. MPI's ANDA Product has not infringed, will not infringe, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '724 patent for at least the reasons detailed in MPI's Notice Letter.

131. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI's ANDA Product is infringing the claims of the '724 patent and will continue to interfere with MPI's business with respect to MPI's ANDA Product.

132. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the '724 patent and from interfering with MPI's business.

133. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning MPI's noninfringement of the '724 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

134. MPI is entitled to declaratory judgment that MPI's ANDA Product has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '724 patent.

**COUNT XVI:**
**(Declaratory Judgment of Invalidity of the '724 Patent)**

135. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

136. The claims of the '724 patent are invalid for failure to meet one or more of the conditions of patentability specified in Title 35 of the United States Code.

137. The alleged invention(s) of the '724 patent do no more than combine familiar elements according to known methods to yield predictable results. Any alleged improvement over the prior art set forth in the '724 patent is no more than the predictable use of prior art elements according to their established functions. A person of skill in the art would have been motivated to combine the teachings of the prior art to achieve the alleged invention of the '724 patent and would have had a reasonable expectation of success in doing so.

138. The claims of the '724 patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. The differences between the subject matter claimed in the '724 patent and the prior art are such that the subject matter as a whole was either fully anticipated by the prior art or would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

139. The claims of the ’724 patent are invalid at least under 35 U.S.C. § 112 for lack of enablement, adequate written description, and as indefinite, and therefore invalid.

140. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI’s ANDA Product is infringing the claims of the ’724 patent and will continue to interfere with MPI’s business with respect to MPI’s ANDA Product.

141. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the ’724 patent and from interfering with MPI’s business.

142. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning the invalidity of the ’724 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

143. MPI is entitled to a declaratory judgment that the claims of the ’724 patent are invalid.

**COUNT XVII:**
**(Declaratory Judgment of Non-Infringement of the ’945 Patent)**

144. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

145. MPI’s ANDA Product has not infringed, will not infringe, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the ’945 patent for at least the reasons detailed in MPI’s Notice Letter.

146. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI’s ANDA Product is infringing the claims of the ’945 patent and will continue to interfere with MPI’s business with respect to MPI’s ANDA Product.

147. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the ’945 patent and from interfering with MPI’s business.

148. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning MPI's noninfringement of the '945 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

149. MPI is entitled to declaratory judgment that MPI's ANDA Product has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '945 patent.

**COUNT XVIII:**
**(Declaratory Judgment of Invalidity of the '945 Patent)**

150. MPI realleges and incorporates by reference the allegations in the preceding paragraphs of its Counterclaims.

151. The claims of the '945 patent are invalid for failure to meet one or more of the conditions of patentability specified in Title 35 of the United States Code.

152. The alleged invention(s) of the '945 patent do no more than combine familiar elements according to known methods to yield predictable results. Any alleged improvement over the prior art set forth in the '945 patent is no more than the predictable use of prior art elements according to their established functions. A person of skill in the art would have been motivated to combine the teachings of the prior art to achieve the alleged invention of the '945 patent and would have had a reasonable expectation of success in doing so.

153. The claims of the '945 patent are invalid at least under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. The differences between the subject matter claimed in the '945 patent and the prior art are such that the subject matter as a whole was either fully anticipated by the prior art or would have been obvious at the time the alleged invention was made to a person having knowledge of such prior art and having ordinary skill in the art to which the claimed subject matter pertains.

154. The claims of the ’945 patent are invalid at least under 35 U.S.C. § 112 for lack of enablement, adequate written description, and as indefinite, and therefore invalid.

155. Unless Counterclaim Defendants are enjoined, MPI believes that Counterclaim Defendants will continue to assert that MPI’s ANDA Product is infringing the claims of the ’945 patent and will continue to interfere with MPI’s business with respect to MPI’s ANDA Product.

156. MPI will be irreparably harmed if Counterclaim Defendants are not enjoined from continuing to assert the ’945 patent and from interfering with MPI’s business.

157. A definite and concrete, real and substantial, justiciable controversy exists between MPI and Counterclaim Defendants concerning the invalidity of the ’945 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

158. MPI is entitled to a declaratory judgment that the claims of the ’945 patent are invalid.

## REQUEST FOR RELIEF

WHEREFORE, Mylan and, with respect to its Counterclaims, MPI respectfully request that this Court enter judgment:

a. Ordering that Counterclaim Defendants’ Complaint be dismissed with prejudice and judgment be entered in favor of Mylan;

b. Declaring that Counterclaim Defendants are not entitled to any declaratory or injunctive relief or any alleged damages for alleged patent infringement by Mylan;

c. Declaring that the filing of MPI’s ANDA has not infringed, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the Counterclaim Patents;

d. Declaring that MPI's ANDA Product does not infringe, is not infringing, and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the Counterclaim Patents;

e. Declaring that the Counterclaim Patents are invalid;

f. Enjoining Counterclaim Defendants and their officers, employees, agents, representatives, attorneys, and others acting on their behalf from representing to anyone, either directly or indirectly, that MPI's ANDA Product has infringed, is infringing, or will infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid or enforceable claim of the Counterclaim Patents;

g. Awarding Mylan its costs and expenses;

h. Declaring that this case is exceptional pursuant to 35 U.S.C. § 285 and awarding Mylan its attorneys' fees; and

i. Awarding Mylan such further relief as this Court may deem necessary, just and proper.

***/s/ William J. O'Brien***
Gordon H. Copland (WV Bar No. 828)
William J. O'Brien (WV Bar No. 10549)
**STEPTOE & JOHNSON PLLC**
400 White Oaks Blvd.
Bridgeport, WV 26330
Telephone: (304) 933-8000
gordon.copeland@steptoe-johnson.com
william.obrien@steptoe-johnson.com

Deepro R. Mukerjee (*PHV pending*)
Lance A. Soderstrom (*PHV pending*)
**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, NY 10020-1605
Telephone: (212) 940-8800

deepro.mukerjee@katten.com
lance.soderstrom@katten.com

Jillian M. Schurr-Hendrix (*PHV pending*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl Street, Suite 1100
Dallas, TX 75201-2591
Telephone: (214) 765-3600
jillian.schurr-hendrix@katten.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2026, I electronically filed the foregoing "Defendants Mylan Pharmaceuticals Inc.'s and Mylan Inc.'s Answer, Defenses, and Counterclaims to Complaint" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

***/s/ William J. O'Brien***
William J. O'Brien (WV Bar No. 10549)